UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTON RAYFIELD,

        Plaintiff,

                                          CASE No. 1:17-cv-867

v.

                                          HON. ROBERT J. JONKER

GRAND RAPIDS, CITY OF, et al.,

        Defendants.

_____/

## OPINION AND ORDER

### INTRODUCTION

On October 1, 2014 Defendants Eric Hornbacher and Craig Glowney arrested Plaintiff Weston Rayfield for violating a Personal Protection Order ("PPO"). The PPO required that Mr. Rayfield refrain from approaching or confronting Ms. Nancy Sawinski—Mr. Rayfield's neighbor in a two-unit residence.[1] Mr. Rayfield brought this § 1983 action on September 28, 2017 alleging that his arrest was made without probable cause; that he was detained too long without a hearing; and that these events ultimately led to his forcible eviction from his residence.

Defendants move to dismiss. (ECF Nos. 25 and 27). The Court heard argument on the motions on June 25, 2018, and took the matter under advisement. (ECF No. 38). For the reasons detailed below, the individual named defendants are entitled to qualified immunity, and the claims against the remaining defendants fail for several procedural or substantive reasons. Therefore, the two motions to dismiss are **GRANTED.**

---

[1] During the events in question Plaintiff was known as Gary Satterfield. Consistent with Plaintiff's present preference, however, the Court will refer to Plaintiff as Mr. Rayfield.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### 1. Mr. Rayfield Begins a Relationship with Ms. Smith

Mr. Rayfield describes himself as an accomplished artist, author, designer, and business consultant.  (ECF No. 14, PageID.65).  He is also a repeat participant in ArtPrize, an annual art competition in the city of Grand Rapids, Michigan.  (*Id.*).  Several years before the events in question, Mr. Rayfield met non-party Susan Smith while at ArtPrize, and both a business and a romantic relationship between the two developed.  Mr. Rayfield moved into one of Ms. Smith's rental properties located on Kendalwood Street in the city of Grand Rapids, and Ms. Smith resided with Mr. Rayfield off and on during their relationship.  (*Id.* at PageID.66).  The rental unit was one of two units in a detached residence (one upper and one lower unit).  The occupant of the upper unit was non-party Nancy Sawinski.

### 2. Mr. Rayfield's Relationship with Ms. Smith Ends and Ms. Smith and Ms. Sawinski seek to Evict Mr. Rayfield from his Rental Unit.

By the summer of 2014, the relationship between Mr. Rayfield and Ms. Smith came to an end, and Ms. Smith sought to evict Mr. Rayfield from the Kendalwood address.  Mr. Rayfield resisted the eviction because he believed that he was entitled to stay as compensation due for certain renovation work he had done.  Ms. Smith initiated formal eviction proceedings by filing a complaint against Mr. Rayfield in the 63rd state district court on September 17, 2014.  Mr. Rayfield was served with the complaint on September 29, 2014, and a hearing on the matter was set for October 2, 2014.  (*Id.* at PageID.67-68).

---

[2] The parties disagree on some of the background circumstances in this case.  Here, the Court recites and accepts as true Mr. Rayfield's version of the background facts solely for the purpose of the motion to dismiss.  The Court makes no findings of fact in this Opinion and Order.

Mr. Rayfield contends that while these formal proceedings were pending, Ms. Sawinski decided to help Ms. Smith evict him from the Kendalwood address through informal, and illegal, means.   So, according to Mr. Rayfield, during ArtPrize 2014 Ms. Sawinski illegally removed artwork, tools, and supplies from a shared garage space.   Then Ms. Sawinski took out a PPO against Mr. Rayfield.   This too, Mr. Rayfield contends, was done in order to push him out of the rental unit.   In fact, Mr. Rayfield claims that an August 2014 police report establishes that Ms. Sawinski admitted this.  (*Id.* at PageID.67).  Mr. Rayfield also says that the PPO was difficult to enforce, as a practical matter, and that the Grand Rapids Police had previously acknowledged this.  (*Id.*).

### 3.  Mr. Rayfield is Arrested for Violating the PPO

The day before the scheduled hearing on the eviction proceedings, on October 1, 2014, Defendants Hornbacher and Glowney were called to the Kendalwood address over a dispute between Mr. Rayfield and Ms. Sawinski.  Mr. Rayfield says the October 1, 2014 call was initiated by Ms. Sawinski and stemmed from an altercation between the two that pertained to the common space in the Kendalwood address's garage.

The Amended Complaint alleges that when the defendant officers arrived, Mr. Rayfield explained to the officers that he had gone to court to get the PPO lifted.  He also told the officers he had videotaped the incident that led to the call, and he explained to them that the tape would show that Ms. Sawinski was the aggressor in the altercation and that he had not violated the PPO. (ECF No. 14, PageID.68).  Mr. Rayfield avers the officers refused to view the video and proceeded to arrest him.

### 4.   Mr. Rayfield is Transferred to the Custody of Kent County and Misses his Court Date on Eviction Proceedings.

According to the Amended Complaint, "[a]t some point after [Mr. Rayfield's] arrest," his custody was transferred from the Grand Rapids Police Department to Defendant Kent County under the terms of an agreement between the two municipalities.  (ECF No. 14, PageID.69). Mr. Rayfield says that in total he was detained for approximately three days, until October 3, 2014, before he was released from custody.  The length of his detention exceeded the 24 hours that Mr. Rayfield contends was the maximum time he could be detained under Michigan law before he would have to be brought before a court for a hearing on bond.  The exact timing that Mr. Rayfield alleges he was in the custody of each municipality is not clear in the complaint.  But regardless of who held him at any particular moment, Mr. Rayfield contends that both the city and the county are responsible.

As a result of his allegedly unlawful detention, Mr. Rayfield contends he missed the scheduled hearing on the eviction proceedings, leading to entry of a default judgment against him. He then sought to have the default set aside, but was unsuccessful in his attempts.  Ultimately he was forcibly evicted from the Kendalwood rental unit, which Mr. Rayfield contends resulted in the loss of significant amounts of his personal property.  (*Id.* at PageID.71).

Mr. Rayfield originally filed this action against Defendants City of Grand Rapids, the Grand Rapids Police Department, and the individual officers Hornbacher and Glowney on September 28, 2017.[3]  He also named "John Doe" defendants, but never updated them with any

---

[3] In a separate action not before this Court, Mr. Rayfield has brought a series of claims relating to his eventual eviction from the Kendalwood address against Ms. Smith and her son.  *Rayfield v. Smith*, No. 1:17-cv-802 (W.D. Mich. filed Aug. 31, 2017) (Quist, J).

real persons.  Mr. Rayfield filed an Amendment Complaint that for the first time added Kent

County as a defendant on January 11, 2018.[4]  All defendants move to dismiss

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Detailed factual allegations

are not necessary.  The Federal Rules provide that a cause of action may be dismissed for "failure

to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a Rule

12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a

claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks omitted).  Put differently, if a plaintiff does "not nudge[ ] [his] claims across the

line from conceivable to plausible, [his] complaint must be dismissed."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).

When reviewing a motion to dismiss under Rule 12(b)(6):

> Assessment of the facial sufficiency of the complaint must
> ordinarily be undertaken without resort to matters outside the
> pleadings. If a court does consider material outside the pleadings,
> the motion to dismiss must be treated as a motion for summary
> judgment under Rule 56 and all parties must be given a reasonable
> opportunity to present all material pertinent to the motion. However,
> a court may consider exhibits attached to the complaint, public
> records, items appearing in the record of the case, and exhibits
> attached to defendant's motion to dismiss, so long as they are
> referred to in the complaint and are central to the claims contained
> therein, without converting the motion to one for summary judgment

*Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted).  Here, Mr. Rayfield

has referred to and quoted from multiple documents in his Amended Complaint which have been

---

[4] The Amended Complaint also dropped the "Grand Rapids Police Department" as a defendant.

provided by Defendants as exhibits in their motions to dismiss. Accordingly, these items are a proper basis for consideration on the Rule 12(b)(6) record.

## DISCUSSION

### 1. Officers Hornbacher and Glowney are Entitled to Qualified Immunity on the False Arrest and Unlawful Detention Claims

In the first two counts of the Amended Complaint, Mr. Rayfield claims Defendants Hornbacher and Glowney violated § 1983 by arresting him without probable cause, and detaining him. Defendants respond by arguing they are entitled to qualified immunity on these claims. The Court agrees with Defendants.

#### a. Governing Law

42 U.S.C. § 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan,* 468 U.S. 42, 44 n.3 (1984); *Stack v. Killian,* 96 F.3d 159, 161 (6th Cir. 1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan,* 840 F.2d 359, 360–61 (6th Cir. 1988); 42 U.S.C. § 1983.

Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1992). It "protects public officials from liability for civil damages if their conduct does not violate 'clearly established statutory or constitutional statutory rights of which a reasonable person would have known.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether an officer is entitled to qualified immunity, courts apply a two-tiered inquiry. *Id.* "The first step is to determine if the

6

facts alleged make out a violation of a constitutional right." *Id.* "The second step is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* The Court may address these two steps in any order. *Id.* If either factor is not satisfied, qualified immunity shields the officer from damages. *Id.*

In sum, "[t]o survive [a] motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015)). "The plaintiff also must allege with particularity 'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Id.* (quoting *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011)).

b.  *False Arrest*

Mr. Rayfield first alleges a claim for false arrest under federal law against Officers Hornbacher and Glowney. The federal right at issue is the Fourth Amendment right to be free from unlawful arrest. *See, e.g.*, *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009). "To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 559, 677 (6th Cir. 2005)). Thus, to prevail on this claim, Mr. Rayfield must establish that his arrest was not supported by probable cause. He cannot do so because even accepting Mr. Rayfield's version of events, the officers had probable cause to make the arrest.

7

Probable cause to effect a warrantless arrest exists when "the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States,* 361 U.S. 98, 102 (1959); *Johnson*, 790 F.3d at 655.  Furthermore:

> "A probable cause determination is based on the 'totality of the circumstances,' and must take account of 'both the inculpatory *and* exculpatory evidence'" then within the knowledge of the arresting officer. *Wesley*, 779 F.3d at 429 (quoting *Gardenhire*, 205 F.3d at 318). Thus, if the officer discovers information or evidence favorable to the accused in the course of an investigation, the officer "'cannot simply turn a blind eye.'" *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999)). Rather, that information or evidence must enter into the totality-of-the-circumstances analysis to determine whether there is probable cause for arrest.

*Courtright*, 839 F.3d at 521.

Officers Hornbacher and Glowney had probable cause to arrest Mr. Rayfield for violation of the PPO even accepting Mr. Rayfield's version of events.  According to Mr. Rayfield's Amended Complaint, Ms. Sawinski called the police regarding an altercation between her and Mr. Rayfield in the residence's common area.  Before departing to the scene, the officers verified that the PPO was still in place.  The PPO, among other things, prohibited Mr. Rayfield from approaching or confronting Ms. Sawinski in a public place or on private property.  (ECF No. 26-1, PageID.152).  Mr. Rayfield admits in his Amended Complaint there was an altercation between Ms. Sawinski and himself.  The difference between altercation and confrontation here are mere semantics.  Furthermore, the officers knew that Mr. Rayfield, and Ms. Sawinski, had a history of confronting and aggravating each other.[5]  Finally, after Mr. Rayfield informed the officers that he had gone to court to get the PPO lifted, the officers confirmed that the PPO was valid before

---

[5] Plaintiff highlights Officer Hornbacher's recommendation that the PPO be reviewed for possible termination because Ms. Sawinski's actions were not consistent with a fear for her safety.  (ECF No. 14, PageID.68).  That does not change the fact, however, that on the date in question there was still a valid PPO against Mr. Rayfield.

arresting Mr. Rayfield for violating the PPO.  This was sufficient to confer probable cause to make a warrantless arrest.

Mr. Rayfield's arguments to the contrary are not persuasive.  First, he makes several arguments that share a common underlying theme that the PPO should never have been entered in the first place, or should be lifted or modified to deal with the practical realities.  At different points Mr. Rayfield argues that the PPO was invalid because Ms. Sawinski admitted she took out the PPO for an improper purpose, that the officers knew the PPO was impossible to enforce, and that the officers knew Mr. Rayfield had gone to court to dissolve the PPO.  Mr. Rayfield cannot spin a plausible claim out of these allegations because the undeniable fact is that a PPO was in effect at the time he and Ms. Sawinski had their altercation.  Moreover, the officers checked to verify this. The excerpts of the police report in the Amended Complaint make clear the officers checked the validity of the PPO—twice—before arresting him.  And even assuming as true that Ms. Sawinski took out the PPO for an improper purpose, Mr. Rayfield cites no authority that would show this somehow undermines the validity of an arrest based on the PPO.  Moreover, while he argues this was information known to the Grand Rapids Police Department, he does not allege the defendant officers knew anything about it.

Second, Mr. Rayfield argues the arresting officers did not have probable cause to make an arrest because they did not look at a video that he told them would exonerate him.  The video at issue (now part of the record) is at best neutral and certainly not exonerating.  In fact, it does not even appear to be made on the date in question.  But Mr. Rayfield responds that the contents of the video at this stage of the case is actually irrelevant.  What matters, according to him, is that the officers failed to view the alleged exculpatory evidence, which in Mr. Rayfield's view,

9

automatically defeats probable cause.  Mr. Rayfield likens his case to that of *Harrington v. City of Detroit*, No. 10-11946, 2011 WL 4360026 (E.D. Mich. Sept. 19, 2011).

This argument is unpersuasive. Probable cause is a practical determination based on the totality of the circumstances.  Officers cannot turn a blind eye to obviously exculpatory information, but this does not mean they have to wait to execute an arrest otherwise supported by probable cause to consider every shred of information a suspect proffers:

> A suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers are entitled to take into consideration in making the determination whether probable cause to arrest exists. A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.

*Rodriguez v. City of Cleveland*, 439 F. App'x 433, 453 (6th Cir. 2011) (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).  "Indeed, '[t]o hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.'" *Id.* (quoting *Criss,* 867 F.2d at 263).  Here, the officers twice confirmed the existence of a valid PPO against Mr. Rayfield.  The protected party under the PPO called to report an altercation with Mr. Rayfield—an altercation that Mr. Rayfield admits occurred.  The officers were not obligated to try the case before executing the arrest.[6]

---

[6] Moreover, actually viewing the video would have changed nothing because it is not the smoking gun of exoneration that Mr. Rayfield supposes it to be.  For one thing, the video appears to be of an earlier interaction, not the altercation at issue on October 1, 2014.  The time stamp on the video is dated in August 2014, and the clothing worn by the individuals in the video, as well as the observable weather, is certainly more consistent with August in West Michigan than October.  Moreover, the video plainly begins in the middle of the dispute, thus it does not show what led to the dispute, or who began it.

Furthermore, Mr. Rayfield has provided no clearly established law that arresting officers must view a videotape identified by an arrestee before probable cause to effect an arrest exists. *Harrington* is not persuasive.  All *Harrington* does is permit a fact-finder to consider how the officers responded to the proffer of a videotape as part of the probable cause determination.  The case was going to trial because the defendants failed to seek summary judgment on the issue. *Harrington*, 2011 WL 4360026, at *2-*3.  Thus the case is distinguishable, and cannot provide a clearly established legal standard for this case.

Because Mr. Rayfield has not stated a plausible claim that his arrest was unsupported by probable cause, he has not alleged a violation of a clearly established constitutional right.  *Cf. Courtright*, 839 F.3d at 523.   Officers Hornbacher and Glowney are entitled to qualified immunity on this count.

### c.  *Unlawful Detention*

Mr. Rayfield next alleges Officers Hornbacher and Glowney violated § 1983 by detaining him in excess of the time prescribed both by state law and the Fourth Amendment.[7]  He contends Michigan law required that after his arrest, he be brought before a judicial officer for a bond hearing within 24 hours, and that "[a]t 24 hours and one minute, there was no legal authority to detain" him.  (ECF No. 34, PageID.223).  As an initial matter, to the extent Mr. Rayfield seeks relief for alleged purported violations of state law, § 1983 does not provide a remedy.  *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (noting that a plaintiff's § 1983 claim that he was unlawfully stopped must turn on federal constitutional law and not on state law); *see also Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (noting that "[i]t has long been established that the

---

[7] Plaintiff also brings this count against the John Doe defendants.  Plaintiff's claims against these defendants will be discussed in a later section.

violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983.")  Mr. Rayfield's assertion that Defendants violated state law therefore fails to state a cognizable claim under § 1983.

That is not the end of the analysis, however, because Mr. Rayfield also references *Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir. 2003), and contends that he has pled a plausible Fourth Amendment claim against Defendants Hornbacher and Glowney for the length of his detention before he received a hearing.  *Cherrington* establishes a general safe harbor rule of 48 hours before a probable cause review:

> The [Supreme] Court previously had recognized in *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." In *County of Riverside,* the Court considered just how soon such a determination must be made, and concluded that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *County of Riverside,* 500 U.S. at 56, 111 S.Ct. at 1670. While a delay of over 48 hours is not *per se* unlawful, the Government bears the burden in such cases to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" that led to the delayed probable cause determination. *County of Riverside,* 500 U.S. at 57, 111 S.Ct. at 1670.

*Cherrington*, 344 F.3d at 643.

As to this claim, Defendants Hornbacher and Glowney argue that they are entitled to qualified immunity because Mr. Rayfield fails to tie their conduct to any ongoing detention.  They effected an arrest on probable cause, and then turned Mr. Rayfield over to the custodial officers. Defendants are correct.  Assuming for purposes of argument that Mr. Rayfield's detention could violate *County of Riverside*, "[t]he plaintiff also must allege with particularity 'facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'"  *Courtright*, 839 F.3d at 518 (quoting *Heyne*, 655 F.3d at 564).  "The test is whether, reading the complaint in the

light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* (quoting *Heyne*, 655 F.3d at 562–63). Mr. Rayfield has utterly failed to allege that Officer's Hornbacher or Glowney had custody or control over him in order to bring him before a court within the period prescribed by *County of Riverside*. To the contrary, Mr. Rayfield avers in his Amended Complaint that he was transferred to the custody of Kent County. In other words, there is no *Twombly* plausible claim that the two named officers were responsible for violating Mr. Rayfield's clearly established constitutional right by holding him in excess of the general rule set out in *County of Riverside.* Regardless of whether the standard is 24 hours, under Michigan law; or 48 hours (or some longer period) under *County of Riverside*, Defendants Hornbacher and Glowney are entitled to qualified immunity on this claim.

**2. Mr. Rayfield's Due Process Allegation in Count III must be dismissed.**

Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Here, Count III of the Amended Complaint alleges that Defendants Hornbacher and Glowney violated Mr. Rayfield's Fourteenth Amendment Right to Due Process. The specific right that Mr. Rayfield identifies in these counts is the right to be free from continued detention without probable cause. (*See* Pl.'s Am. Compl. Count III, ¶ 81 ("Defendants lacked legal justification, or probable cause, to detain Plaintiff for 72 hours)). Under these circumstances, the Sixth Circuit has held that the Fourth Amendment standard applies. *See Jackson v. County of Washtenaw*, 310 F. App'x 6 (6th Cir. 2009) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 748-750 (6th Cir. 2006), and *Albright*, 510 U.S. 266 (1994), and noting that "a plaintiff claiming that his constitutional rights were violated when state officials detained him without probable cause must assert a Fourth Amendment claim"). Accordingly relief must be

sought under the Fourth Amendment and its standards, not the Fourteenth.  Accordingly, Count III must be dismissed.

### 3.   Mr. Rayfield's Claims against the City of Grand Rapids, County of Kent, and John Doe Defendants must be dismissed.

In Count IV, Mr. Rayfield alleges that Defendants City of Grand Rapids and County of Kent failed to provide proper training to their officers, and in particular Michigan's 24-hour detention limit for PPO arrestees who have not received a judicial determination of probable cause. Mr. Rayfield also brings counts against John Doe defendants, who he avers are "multiple as-yet-unidentified officers, employees, or affiliates of the City of Grand Rapids and/or the County of Kent who were involved in the detention of Plaintiff from October 1, 2014, through October 3, 2014, or whose actions or failures to act resulted in same."  (ECF No. 14, PageID.64).  These claims are also subject to dismissal.

A municipality or other local governmental entity is considered a "person" under § 1983, and may therefore be held liable for its actions depriving a plaintiff of his federal rights—commonly referred to as *Monell* liability.  *Board of Cty. Comm'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).   To establish municipal liability under § 1983, a plaintiff must establish that a constitutional violation caused his or her harm, and that the municipality was responsible for the violation.  *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).  Municipal liability for such harms exists only if the implementation of official policies or established customs caused the harm.  *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (Powell, J., concurring)).  To prove an illegal policy or custom, a plaintiff may look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal

rights violations." *Id.*  It is possible to show that a municipality has "a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Id.* (quotations omitted).  Here the basis of Mr. Rayfield's *Monell* claim is an alleged failure to train.

> *a.  Mr. Rayfield's Claims against the John Doe and Kent County Defendants are Time-Barred*

Mr. Rayfield added Kent County to the case in an Amended Complaint filed more than three years after the October 2014 events.  "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" *Jones v. Bock,* 549 U.S. 199, 215 (2007). *See also Whitaker v. Stamping,* 302 F.R.D. 138, 141 (E.D. Mich. 2014) ("[d]ismissal under Rule 12(b)(6) is proper when the applicable statute of limitations bars the claim," citing *Jones,* 549 U.S. at 215).

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia,* 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson,* 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn,* No. 97–2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

The events Mr. Rayfield complains about took place between October 1, 2014 and October 3, 2014.  Mr. Rayfield brought this action on September 28, 2017, just inside the three-year window.  But when Mr. Rayfield first filed this suit, he did not name Kent County as a

defendant.  Rather, on November 21, 2017, Mr. Rayfield filed a stipulation stating he "anticipate[d] *adding* an additional Defendant, the County of Kent who, per records provided by the Defendants' counsel, may have had custody over Plaintiff at times relevant to the Complaint."  (ECF No. 8, PageID.29).  On January 9, 2018, Mr. Rayfield filed a document entitled "Motion to Add Party" to add Kent County under Rule 21.  (ECF No. 11).  The Court granted the "motion to add a party" on January 11.  (ECF No. 13).  The Amended Complaint was filed the same day.  (ECF No. 14). Mr. Rayfield does not dispute that he added Kent County after the three year statute of limitations had expired, but he contends that the January 11th amendment relates back to the date of his original complaint under Rule 15 of the Federal Rules of Federal Procedure.  The Court disagrees.

Rule 15 provides as follows:

**(c) Relation Back of Amendments.**

> **(1)**    ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
> > **(A)**    the law that provides the applicable statute of limitations allows relation back;
> >
> > **(B)**    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out– or attempted to be set out–in the original pleading; or
> >
> > **(C)**    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > **(i)**    received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > **(ii)**    knew or should have known that the action would have been brought against it, but for a

16

> mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c).  Accordingly, for a claim against a new defendant to relate back to the time of the original complaint, three requirements must be met:

> First, the claim against the new defendant must arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Second, "within the time period provided by Rule 4(m) for serving the summons and complaint," the party being added must have "received such notice of the action that it will not be prejudiced in defending on the merits." And third, within that same time period, it must be the case that the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*In re Biozoom, Inc. Securities Litigation*, 93 F. Supp. 3d 801, 811 (E.D. Mich. 2015) (internal footnotes omitted).

Mr. Rayfield avers he can meet these requirements because when he originally filed this action he believed that he was in the custody of Grand Rapids for the entirety of the October 1 through October 3, 2014 period.  He did not find out until later, he says, that he had been transferred to Kent County's custody.  Mr. Rayfield says the delay is due to a FOIA dispute with the city that prevented him from finding out that Kent County held him until after the statute of limitations had run.[8]  (ECF No. 35, PageID.255-256). Defendant Kent County argues that Mr. Rayfield is seeking to add a party, rather than substitute a party due to a mistake, and that the Sixth Circuit has held that an addition such as this does not relate back under Rule 15 to the time of the original complaint.

In *Smith v. City of Akron*, 476 F. App'x 67 (6th Cir. 2012), a case that both parties reference, the Sixth Circuit held Rule 15(c) was not designed to correct the problem of when a plaintiff fails

---

[8] Mr. Rayfield appears to have made this statement for purposes of explanation, and does not appear to argue for equitable tolling.

to discover the identity of a party before the statute of limitations had expired. *Id.* at 69. The case reaffirmed earlier decisions that held "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)." *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Here, Mr. Rayfield seeks to do exactly what the Sixth Circuit holds he cannot do under Rule 15—add a new party to the case and have it relate back to the time of the original complaint. The repeated references to "add" Kent County, puts this case squarely within *Smith*.

Mr. Rayfield insists that he is not seeking to "add" a party, but rather he was mistaken over the identity of the party that held him between October 1 and October 3, 2014, and that this case should be controlled by the Supreme Court's decision in *Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538 (2010). As the *Smith* court explained it, in *Krupski*, "the plaintiff knew of two potential parties when she filed the lawsuit, but she sued the wrong party and corrected the mistake only after the statute of limitations had expired." *Smith*, 476 F. App'x 67. The Supreme Court found that the subsequent amendment related back under Rule 15(c). This case, however, is distinguishable. Mr. Rayfield did not sue the wrong party and then later seek to correct the mistake. Rule 15(c)(1)(C) anticipates a "change" of party, and the Court finds this word to be instructive. Mr. Rayfield is not seeking to *change* the party by substituting a new party in place of the originally named defendant. Rather, he is seeking to add an additional party—the County—along with the party he originally sued—the City. That is not the type of mistake that was discussed in *Krupski*.

Accordingly, the addition of Kent County as a named defendant in the Amended Complaint does not relate back and Mr. Rayfield's claims against Kent County are untimely.[9] For the same

---

[9] As an alternative basis, Kent County argues that Mr. Rayfield's claims fail as a matter of law under *Twombly and Iqbal* because they are supported only by his unsubstantiated beliefs, that is, by "information and reasonable belief." The Court is not persuaded by this alternative argument.

reason, the claims against the John Doe defendants are also untimely.  *See Smith*, F. App'x at 69; *Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008).

       *b.  Mr. Rayfield Fails to State a Plausible* Monell *Claim.*

       Mr. Rayfield's claims under *Monell* against the city of Grand Rapids and Kent County based on alleged inadequate training also fail to state a claim upon which relief can be granted for several substantive reasons.  First, it is not enough to raise a claim under *Monell* that the municipalities failed to properly train employees regarding the requirements of state law.  Rather, "*Monell* liability attaches only to constitutional violations, and not to state-law violations."  *Joy v. Godair*, No. 1:16-cv-187, 2016 WL 7334837, at *6 (W.D. Mich. Dec. 19, 2016) (citing *Monell*, 436 U.S. at 694)).  Thus, to the extent Mr. Rayfield depends on the alleged failure of the City and County to train officers on the requirements of state law, Mr. Rayfield fails to state a claim under *Monell.*

       Any failure to train claim must rest on the Fourth Amendment and the 48 hour safe harbor rule as laid out in *Cherrington* and *County of Riverside*, discussed above.  But those cases are silent on what happens when two separate municipalities share responsibility, as Mr. Rayfield contends.  Mr. Rayfield suggests a sort of tacking argument, or non-delegable duty on the part of the City to make sure that the County did not violate constitutional rights.  But Mr. Rayfield cites no law to support the theory.  Moreover, Mr. Rayfield's allegations include nothing that concretely identifies training failures of any kind, or that attempts to link any such alleged failures to what happened

---

"'Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions.'"  *Cassidy v. Teaching Co., LLC*, No. 2:13-cv-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (quoting Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2013).  Of course, as stated in the next section, Plaintiff's allegations as a whole fail to state a *Twombly* plausible *Monell* claim against the municipalities in this case.

here.   Conclusory assertions are not enough to state a *Twombly* plausible *Monell* claim.   *See Twombly*, 550 U.S. at 555 (concluding that conclusory allegations are insufficient to survive a motion to dismiss); *Matthews v. City of Toledo*, No. 3:15cv00665, 2016 WL 7474400, at *6 (N.D. Ohio, Dec. 29, 2016) (finding the plaintiff failed to state a *Monell* claim under *Twombly* and *Iqbal*).

At best, what Mr. Rayfield manages to allege against the municipalities is that one or both fumbled the ball in managing the custodial handoff of Mr. Rayfield.  But *Monell* claims do not lie to redress isolated mistakes.  In *Heyerman v. County of Calhoun*, a case where the plaintiff was imprisoned for more than seventeen years as a pretrial detainee following a Court of Appeals vacatur and remand, the Sixth Circuit held that:

> A municipality may be liable under § 1983 for a failure to train its employees or to institute a policy to avoid the alleged harm where the need to act "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability. *See id.* at 390–91, 109 S.Ct. 1197 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

*Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).    The court went on to find two ways under which a plaintiff may demonstrate the requisite need to act.  First, the plaintiff can present evidence that shows "the municipality possessed actual knowledge indicating a deficiency with the existing policy or training . . . such as where there have been recurring constitutional violations."  *Id.*  "Otherwise, the plaintiff must show that the need to act should have been 'plainly obvious to the [municipality's] policymakers, who, nevertheless, are 'deliberately indifferent' to the need.'"  *Id.* at 648-49 (quoting *Canton*, 489 U.S. at 390 n. 10).  Mr. Rayfield has alleged neither.

There is nothing in the Amended Complaint to suggest that the City or County were doing anything by design to hold Mr. Rayfield longer than the Constitution permits.  Mr. Rayfield's argument that he needs discovery to ascertain whether there are other cases like his puts the cart before the horse.  At most all he has alleged is a mistake by defendants that led to his detention for a short time beyond the *County of Riverside* 48-hour safe harbor.  This does not amount to a plausible claim under *Monell* for the same reason that the Sixth Circuit concluded in *Heyerman* that a mistake leading to an individual's pretrial detention for seventeen years did not amount to a *Monell* claim.  In sum, "[t]his is not a circumstance where the need for action was 'plainly obvious' to the municipality's policymakers or where what happened was a 'highly predictable consequence' of the County's existing policy."  *Id.* at 659.  Accordingly, Mr. Rayfield has failed to state a *Monell* claim against the two municipalities.

## CONCLUSION

Even accepting Mr. Rayfield's version of events, the individual officers had probable cause to arrest him for violation of a PPO that was still in effect as issued by the state judge.  At a minimum, they are entitled to qualified immunity for their decision to arrest.

The potential claims against unidentified "John Doe" defendants, and against the belatedly added County of Kent are time-barred.  Moreover, the allegations of the Amended Complaint fail to state *Twombly* plausible *Monell* claims against the County and City in any event.

**ACCORDINGLY, IT IS ORDERED** that the Defense Motions to Dismiss for Failure to State a Claim (ECF Nos. 25 and 27) are **GRANTED** to the extent as detailed in this Opinion and Order.  This case is **DISMISSED.**

Dated: _____July 17, 2018_____       /s/ Robert J. Jonker_____
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE